**D. H. SCOTT & SON et al. v. WALLACE.**

**No. 3207.**

Court of Civil Appeals of Texas. El Paso.
June 6, 1935.

Rehearing Denied June 27, 1935.

Clark, Harrell & Clark, of Greenville, for appellants.

Neyland & Neyland, of Greenville, for appellee.

HIGGINS, Justice.

This is a suit by R. H. Wallace against T. M. Scott, doing business as D. H. Scott & Son, and the Rutland Savings Bank of Rutland, Vt., and others not necessary to mention, to cancel certain notes and deeds of trust upon land securing their payment and to remove the cloud cast upon the title to such land by the deeds of trust. The Rutland Savings Bank, by cross-action, sought recovery upon the note held by it and foreclosure of lien. Upon trial without a jury, judgment was rendered as prayed by the plaintiff, from which the defendants named appeal.

The question presented is the alleged usurious nature of a loan made January 20, 1916, and two subsequent renewals thereof. Interest payments theretofore made exceeded the principal debt, and these payments were sought to be applied in extinguishment of the entire debt. It is not contended interest in excess of the permitted rate was in fact paid. The question arises upon acceleration clauses in the instruments.

On the date stated Wallace, through D. H. Scott & Son, borrowed $6,200, executing notes and deeds of trust as later stated.

The principal was reduced to $4,000 and renewed January 14, 1921. This was again renewed December 22, 1924, with a $2,000 additional loan. The $6,000 note covering the last transaction with deed of trust lien was acquired by the Rutland Savings Bank.

The instruments evidencing the various transactions vary to some extent. Each transaction will be separately considered. Wherever italics appear they are ours.

When the original loan was made, Wallace and wife executed note or bond for $6,200, dated January 20, 1916, to the order of Commerce Farm Credit Company, payable January 1, 1921, with interest at the rate of 6 per cent. per annum from February 1, 1916, as evidenced by interest notes for the proper amounts. The principal note provided: "The principal of this Bond from and after its maturity, and all past due interest thereon, shall bear interest at the rate of ten per centum per annum, payable annually, from *due date* thereof until paid."

The privilege was reserved of paying all or any part of the note on January 1, 1919, or 1920. The note provided that, if "any installment of interest thereon is not paid when due, the *principal of*" the bond should at once become due.

To secure the payment of this note, Wallace and wife executed a first deed of trust upon the land described in his petition.

At the same time Wallace and wife executed five additional interest notes for amounts representing interest at the rate of 2 per cent. per annum upon the principal note. These additional notes were payable to said Commerce Company on January 1, 1916, and January 1st of each year thereafter. These notes upon their face state:

(1) That it is "for part of the interest due that date on our principal note of even date herewith for $6,200.00."

(2) "This is one of a series of notes secured by a Second Deed of Trust of even date herewith on real estate in Delta County, Texas, and the failure to pay this note, when due, shall, at the option of the payee, mature all of said series of notes."

(3) "Any payment on the original bond or principal note shall reduce this note proportionately."

To secure the payment of these notes, Wallace and wife executed a second deed of trust upon the same land. This deed shows upon its face it is subject to the other deed and that the notes which it was given to secure were given for a part of the interest upon the principal note secured by the first deed.

The Commission of Appeals has recently decided a number of usury cases, to some extent clearing up confusion which has existed in the law of usury in this state. These opinions are Lincoln Nat. Life Ins. Co. v. Anderson, 80 S.W.(2d) 294; Odell v. Commerce Farm Credit Co., 80 S.W.(2d) 295; Marble Sav. Bank v. Davis, 80 S.W.(2d) 298; and Jennings v. Texas Farm Mortg. Co., 80 S.W.(2d) 931; Walker v. Temple Trust Co., 80 S.W.(2d) 935; Adleson v. B. F. Dittmar Co., 80 S. W.(2d) 939; Commerce Trust Co. v. Best, 80 S.W.(2d) 942; National Bond & Mortgage Corp. v. Mahanay, 80 S.W.(2d) 947; and Braniff Inv. Co. v. Robertson, 81 S. W.(2d) 45.

In one of these cases [Walker v. Temple Trust Co. (Tex. Com. App.) 80 S. W.(2d) 935, 937] Judge German said:

"From the foregoing it clearly appears that in cases where it is sought to make the contract usurious by reason of the acceleration clause in the deed of trust relating to interest coupons, or separate interest obligations, the intent to collect unearned interest in such event must be so clearly and positively expressed by the contract as to overcome the presumption that the parties intended to abide by the equitable rule which requires a surrender of unearned interest in order to obtain a foreclosure, and to leave no room for a reasonable hypothesis by which the imputation of usury may be avoided. In other words, the language of the whole contract, when fairly and reasonably construed, must make it manifest that there was a definite purpose and intent to collect the unearned interest, notwithstanding it had not matured into a fixed legal liability.

"We think that in this instance the contract construed as a whole clearly is susceptible of a construction that, notwithstanding the literal words of the acceleration clause in the second deed of trust, the parties did not contemplate the payment of unearned interest in the event of default and maturity of the indebtedness. In fact, we think the contract fairly construed as a whole shows an intention not to do so."

In that case the court did not give effect to the literal language of the acceleration clause, but construed the contract as a whole, and held that it was fairly susceptible of the construction that the parties did not contemplate the payment of unearned interest in the event of default and maturity of the indebtedness, but manifested an intention on the part of the lender to avoid the collection of usurious interest, negativing the idea that unearned interest was to be exacted.

Other cases of the same series show that the court, when it could reasonably be done, construed the contracts as not usurious, resolving doubt in favor of validity, although literal interpretation of the accelerating provisions would have impelled a contrary holding.

Other cases of the same series construed "the whole of the indebtedness" and similar phrases as meaning principal and accrued interest only, following, in so doing, Dugan v. Lewis, 79 Tex. 246, 14 S. W. 1024, 12 L. R. A. 93, 23 Am. St. Rep. 332. See Lincoln Nat. Life Ins. Co. v. Anderson (Tex. Com. App.) 80 S.W.(2d) 294; Odell v. Commerce Farm Credit Co. (Tex. Com. App.) 80 S.W.(2d) 295; Marble Savings Bank v. Davis (Tex. Com. App.) 80 S.W.(2d) 298.

In the present case the acceleration clause in the principal note, if exercised,

would not have matured any interest note. The acceleration clause in the second series of interest notes and in the second deed of trust, however, did authorize acceleration of maturity of all of that series. If literal effect be given to those provisions, the entire contract must be regarded as usurious. But the second series of notes and the second deed of trust upon their face show such notes were given for part of the interest upon the principal notes, and provide that any payment on the principal note should reduce the series proportionately. The principal note grants the privilege of payment in whole or in part on January 1, 1919, or January 1, 1920. The first deed of trust provides: "And further that we will pay promptly when due any and all tax of every nature that may be levied or assessed against this Deed of Trust or against the debt hereby secured, or against any interest in the above described property created in the mortgagee thereby, up to, but in no event exceeding an amount which when added to the rate of interest charged for the period covered by the tax shall equal the maximum rate of interest per annum allowed by the laws of this State for that period."

The second deed of trust provides:

" * * * But if the notes hereby secured and each of them are not paid promptly when due; or in case of a breach of any of the covenants or agreements in said first trust deed, *all of which are adopted and made a part of this instrument* as fully to all intents and purposes as if written at length herein, then all of said notes hereby secured shall become due and payable at the election of the holder. * * *

"All of the provisions of the said first trust deed with reference to the powers, rights and duties of the trustee and his successors and the sale therein authorized are adopted and made a part hereof and are to be construed as a part hereof and apply to the sale herein authorized, as if fully written herein."

These provisions of the notes and deeds of trust manifest an intention not to exact the payment of any unearned interest.

■ As we view the same, there is nothing in the notes and first or second deeds of trust, considered as a whole, which necessarily impels the conclusion that it was the intention to collect in full all of the second series of interest notes whether or not the interest which they represented

was earned. In view of the fact that the principal note grants the privilege of prepayment and the abatement provision of the second series of interest notes and other provisions of the entire contract, we think the contract should be construed as authorizing the collection of earned interest only and the contract therefore not usurious. Lincoln Nat. Life Ins. Co. v. Anderson, supra; Odell v. Commerce F. C. Co. (Tex. Com. App.) 80 S.W.(2d) 295; Walker v. Temple Trust Co. (Tex. Com. App.) 80 S.W.(2d) 935.

The recital in the second series of interest notes that they were given for part of the interest upon the principal note and the provision for abatement in case of prepayment of the principal note in whole or in part distinguishes this case from Manning v. Christian (Tex. Com. App.) 81 S. W.(2d) 54, 55.

The first renewal was evidenced as follows:

■ Principal note of Wallace and wife dated January 14, 1921, due January 1, 1926, in favor of D. H. Scott & Son, for $4,000, with 6 per cent. interest per annum as evidenced by interest notes for $240 each. The principal note provides:

"This note and said interest notes to bear interest after maturity at the rate of ten per cent per annum until paid.

"It is expressly agreed that in case of default in the payment of this note or any one of said interest notes, or any part of either, as they shall become due and payable, or in case of failure to comply with any of the agreements and conditions set forth in the instrument given to secure this note, then in such case the *principal sum* expressed in this note, with all accrued interest, shall, at the option of the legal holder or holders hereof, at once become due and payable without notice, and be collected. * * *

"With the privilege to pay 1/5 on Jan. 1st, 1922, and 1/5 on any interest date thereafter, provided 60 days written notice is given."

The interest notes provide:

" * * * Being the interest due that day on our note of even date herewith, for $4,000.00. * * *

"Any payment on principal note shall reduce this note proportionately."

To secure the payment of this $4,000 note and interest notes, a first deed of trust was executed upon the same land

which differs in no material respect from the first deed of trust of the original transaction.

Five other interest notes were executed in favor of D. H. Scott & Son representing 2 per cent. additional interest payable yearly. Each note was for $80, "being for part of the interest due that day on our principal note of even date herewith for $4,000.00." Each of said notes contains a clause accelerating maturity of all of said sums in event of failure to pay same when due.

To secure the payment of these notes, a second deed of trust was executed substantially the same as the second deed of trust in the original transaction.

These second lien notes do not provide for any abatement, as did the second lien notes in the original transaction, but they do upon their face show they are for part of the interest upon the principal obligation. In Manning v. Christian, supra, Judge German attached importance to the fact that the second lien notes in that case did not upon their face so disclose, saying: "This, to our minds, tends to show that the lender, for the purpose of being able to mature all of these notes in case of default in one, designedly failed to disclose on their face that they were interest notes. This, together with the precise and positive wording of the notes themselves that the holder might mature all of said notes, discloses an intention to mature them and make them payable in full, even though they represented only unearned interest."

The inference is that, if such disclosure had been made upon the face of the notes, the contract would have been held free from usury.

Construing the first renewal contract as a whole and as evidenced by all of the instruments, we think it may fairly be construed as showing an intention to collect only earned interest and the contract therefore not usurious. Lincoln Nat. Life Ins. Co. v. Anderson, supra; Odell v. Commerce F. C. Co., supra; Walker v. Temple Trust Co., supra.

■ The second renewal note is for $6,000, and representing $4,000 of the original obligation, plus an additional loan of $2,000. It is dated December 22, 1924, in favor of D. H. Scott & Son, due January 1, 1932, and bears interest at the rate of 6 per cent. per annum from January 1, 1925,

payable annually as evidenced by seven interest notes. The acceleration clause authorized acceleration of "the principal sum expressed in this note, with all *accrued interest*." (Italics ours.) The note granted the privilege of anticipating payment. The interest notes show such to be their character, and provide that "any payment on principal note shall reduce this note proportionately." The said principal and interest notes are secured by a first deed of trust in the same form as the first deed of trust in the first renewal transaction.

The second lien notes are for $60 each, representing interest at the rate of 1 per cent. per annum. The acceleration clause authorized maturity of all of the series if any of same was not paid when due. The second deed of trust securing these notes, in some respects, differs materially from the second deeds of trust heretofore considered. Some of its provisions we quote as follows:

"The notes hereby secured are given for a part of the interest on the note secured by said First Deed of Trust. * * * .

"It is expressly agreed and stipulated that foreclosure, pro tanto, of the lien of this deed of trust, either by action or by the exercise of the power herein contained, shall not affect or impair the lien hereof for unmatured installments or notes herein recited to be secured, or for payments that may be made after the institution for partial foreclosure by holders hereof, of any sums necessary or proper to be expended for the protection of the lien of this instrument; and sale of said lands and tenements, whether by the Trustee under the power herein contained or by action, shall not exhaust the power of the Trustee but as often as default be made, as aforesaid, the power of sale or to foreclose by action may be exercised and the purchaser or purchasers at such sale shall take subject to said prior lien and to the unmatured notes and other sum secured hereby.

"It being the intention of the parties to conform strictly to the usury laws now in force, any of the said contracts for interest shall be held subject to reduction to the amount allowed under said usury laws as now or hereafter construed by courts having jurisdiction."

We are of the opinion, under the recent rulings of the Commission of Appeals above referred to, this last transaction clearly is not to be regarded as usurious.

Discussion of the question is regarded as unnecessary.

Upon the conclusions announced, it follows plaintiff should have been denied any relief, and the Rutland Savings Bank was entitled to the relief sought upon its cross-action.

The judgment is reversed and so rendered.